UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/10
```

JULIANA MARIA MAYANCELA,

      Plaintiff,

    -v-                                No.  08 Civ. 245 (LTS)(HBP)

BIRO MANUFACTURING COMPANY,

      Defendant.

------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

This action, brought by Juliana Maria Mayancela ("Plaintiff" or "Mayancela"),

against Biro Manufacturing Company ("Biro" or "Defendant"), arises from injuries sustained while

Mayancela was operating a poultry cutting machine that Mayancela alleges was manufactured by

Biro.  Mayancela asserts product liability claims against Biro under New York common law

premised upon Biro's alleged defective design of the machine and failure to provide adequate

warnings.  The Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.

Biro has moved in limine for the exclusion of the testimony of Plaintiff's expert

witness, Dr. Jeffrey Ketchman.  Biro has also moved, pursuant to Federal Rule of Civil Procedure

56,[1] for summary judgment dismissing Mayancela's product liability claims.  The Court has

considered the parties' submissions thoroughly and, for the reasons explained below, Biro's motion

in limine and motion for summary judgment are both denied.

---

[1]    In its summary judgment papers, Biro failed to comply with Local Civil Rule 56.1.  The Court will not exercise its discretion to deny the motion on that ground alone. However, the Court reminds the parties to comply with all applicable federal, local and individual rules of procedure.

BACKGROUND

The Underlying Accident and Injury

       The following facts are undisputed.  On September 6, 2005, Mayancela, an employee of Myrtle Poultry Sales, injured her hand while operating a poultry cutter.  As Mayancela was attempting to separate a chicken drumstick from the thigh by sliding a piece of chicken along the poultry cutter's guide bar so that it would make contact with the spinning blade and separate the two pieces, the spinning blade lacerated her hand.  Mayancela immediately rushed to the hospital.  The next day, she returned to the worksite and took photographs of the machine.

       Mayancela commenced this action by filing a complaint on April 30, 2007, in Supreme Court, Bronx County, New York.  Biro removed the case to this Court on January 10, 2008.  The machine on which Plaintiff was injured (the "subject machine") was no longer available when Mayancela initiated this action.  Pl. Opp. Ex. F; Pl. Dep. 29:18-25.

The Challenged Expert Testimony

       Mayancela's counsel hired Jeffrey Ketchman, Ph.D., as an expert witness and provided him with a 2006 Biro BC-100 model ("the exemplar machine").  See Ketchman Aff. ¶ 3.  Dr. Ketchman reached the following conclusions: 1) the subject machine was a 1967 Biro BC-100 model; 2) the accident was a result of a defect in the finger guard assembly which exposed the blade during normal cutting; and 3) the machine's warnings were inadequate to prevent the accident.  Ketchman Aff. ¶¶ 6, 8-9.  Dr. Ketchman also constructed an alternative finger guard that does not expose the blade during normal cutting, and proceeded to test its feasibility by cutting various pieces of poultry.  Ketchman Aff. ¶¶ 11-12.

       Dr. Ketchman holds a doctorate in mechanical engineering and has extensive practical and academic experience related to product design and manufacturing.  Ketchman Aff. ¶¶

1, 22. He based his identification of the subject machine on a comparison of the photograph of the subject machine to the components of the 2006 machine. He also compared the photographs to brochures and internet images of all other Biro poultry cutters to date and competing poultry cutters. After narrowing his focus to the 1967 model Biro machine, he set about tracing a scaled image of that machine against the photographed machine, and determined "within a reasonable degree of engineering certainty" that the 1967 model was involved in the accident. Ketchman Aff. ¶ 15.

Dr. Ketchman's opinion regarding the cause of the accident is based upon Mayancela's testimony, her photographs of the subject machine and his own observations of the exemplar machine. He concluded that the pivoted spring mechanism of the finger guard, which weighs down the finger guard from the knife cover's front end during cutting and pivots upward from the rear end during cleaning, caused the finger guard to shift downwards upon inadvertent pressure. The warnings on the exemplar machine, claim Dr. Ketchman, do not mention the presence of this hazard, alerting the user only to "always keep hands clear of blade and other moving parts." Ketchman Aff. ¶¶ 8-9.

Dr. Ketchman's analysis also concluded that Mayancela's employer had altered the machine from its original condition by increasing the speed of the motor from 1/2 horsepower ("HP") to 3/4 HP; removing a hood interlock switch designed to cut off power to the machine when the upper hood was lifted; changing the power cord and switch box; and altering both the hood and the guide bar. Dr. Ketchman also observed that it appeared the finger guard had been altered. Ketchman Aff. ¶ 37.

DISCUSSION

Biro's Motion to Exclude the Testimony of Dr. Ketchman

Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the witness has applied
> the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (West 2002). The Rule requires that the trial court make a "preliminary

assessment of whether the reasoning or methodology underlying the testimony is scientifically valid

and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert

v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 592-93 (1993). "Its overarching subject is the

scientific [or technical] validity and thus the evidentiary relevance and reliability of the principles

that underlie a proposed submission." Id. at 594-95. The proponent of the evidence must

demonstrate admissibility to the satisfaction of the Court under Rule 104(a) by establishing scientific

or technical reliability by a preponderance of the proof. Bourjaily v. United States, 483 U.S. 171,

175-76 (1987). Matters of exclusion or admission of evidence pursuant to Rule 702 are left to the

broad discretion of the trial court. Zuchowitz v. United States, 140 F.3d 381, 386 (2d Cir. 1998).

Expert testimony should assist the jury in understanding the evidence or determining

a fact in issue. See United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993). In assessing

admissibility, the Court must determine whether the proffered expert testimony is relevant, that is,

whether it "ha[s] any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence,"

Fed. R. Evid. 401, and whether the proffered testimony has a sufficiently "reliable foundation" to

permit it to be considered, Daubert, 509 U.S. at 597. The Court must "ensure that any and all

scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589; Brooks v.

Outboard Marine Corp., 234 F.3d 89, 91 (2d Cir. 2000).

Biro challenges Dr. Ketchman's qualifications as an expert in the subject matter on which he opines. Biro also disputes Dr. Ketchman's conclusions as to the identity of the subject machine's manufacturer, the design defect that allegedly caused the accident, and the inadequacy of the warnings on the subject machine, as well as the underlying methodology that led to those conclusions.

Dr. Ketchman's Qualifications

Biro argues that Dr. Ketchman is a mechanical engineer whose expertise is general as to all machines, rather than specific as to the area of poultry cutters, and that he therefore lacks appropriate qualifications to serve as an expert witness in this matter. However, mechanical engineers are adequately qualified to render opinions as to "the interaction between people and machinery," Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 83 (2d. Cir. 1997), and in the specific context of poultry cutters, courts have admitted the testimony of mechanical engineers as to design defects and their impact on a set of injuries. See e.g. Urena v. Biro Mfg. Co., 114 F.3d 359, 365 n.3 (2d Cir. 1997); Marmol v. Biro Mfg. Co., No. 93 Civ. 2659, 1997 WL 88854 at *5 (E.D.N.Y. Feb. 24, 1997). Accordingly, the Court concludes that the challenges raised by Biro to Dr. Ketchman's qualifications are relevant to the weight, and do not preclude the admissibility, of his opinions. McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995).

Dr. Ketchman's Expert Conclusions and Underlying Methodology

The Court may permit the introduction of expert opinion when it is the product of a reliable scientific method, not mere speculation. Daubert, 509 U.S. at 590. As long as an expert's methodology overcomes that initial hurdle of being based on a reliable scientific process, any remaining issues as to an expert's methods go to the weight, not admissibility, of his testimony.

McCullock, 61 F.3d at 1043.  An expert's identification of a machine's manufacturer is admissible

even when the manufacturer does not have the subject machine in his possession.  Urena; Marmol,

1997 WL 88854 at *4.  The Court concludes that Dr. Ketchman's conclusions as to the identity of

the subject machine's manufacturer, the design defect that caused the accident, and the inadequacy

of the machine's warnings are based upon a sufficiently "reliable foundation" to be admissible.

   Dr. Ketchman tested his hypothesis that the subject machine was a Biro machine by

comparing the components of a known Biro machine (the exemplar machine) to the determinable

components in the photographs of the subject machine, as well as by comparing the subject machine

to photos and brochures of all Biro models and images of various other manufacturers' models.  The

Court concludes that this method is sufficiently reliable to meet the Rule 702 standard.  Cf.

Outerboard, 234 F.3d at 92 (excluding expert testimony as "mere conjecture" when the expert

neither viewed an exemplar of the machine involved in the accident nor photographs).

   The Court will admit an expert's conclusions as to the cause of an accident if there is

a basis upon which the Court may find that those conclusions were the product of a reliable scientific

or technical methodology.  Stone v. 866 3rd Next Generation Hotel, LLC, No. 99 Civ. 4780, 2002

U.S. Dist. LEXIS 9215, at *9 (S.D.N.Y. May 23, 2002).  Dr. Ketchman determined that a defect in

the finger guard caused the accident through analysis of the components of a finger guard in the

exemplar machine that he deemed were comparable.  He confirmed his conclusion through an

empirical demonstration that a finger guard without the purported defect did not create the same

hazard of contact with the machine's blade.  This is hardly the kind of subjective belief or

unsupported speculation that would render such a conclusion inadmissible.  See, e.g., Nook v. Long

Island R.R. Co., 190 F. Supp. 2d 639, 642 (S.D.N.Y. 2002) (holding expert witness's conclusion that

plaintiff's injuries were the result of inhaling silica inadmissible because the expert witness had only

tested the silica level of cement and had not tested the silica level of the surrounding air that plaintiff

had inhaled).

Biro's challenge to Dr. Ketchman's conclusions about the adequacy of the warnings

on the subject machine also goes to the weight, rather than the admissibility, of Dr. Ketchman's

opinion.  Dr. Ketchman based his conclusions about the warnings on his observation of the exemplar

machine and a photograph of the subject machine, which he found to be lacking in a specific

warning as to the hazard which he opined caused the accident.  There is nothing to preclude Biro

from attacking such a conclusion through cross-examination or the presentation of its own expert.

B.F. Goodrich v. Betkoski, 99 F.3d 505, 526 (2d Cir. 1996).  Thus, Dr. Ketchman's opinion as to the

adequacy of the warnings is admissible.

For the foregoing reasons, Biro's motion in limine is denied.

Biro's Motion for Summary Judgment

The standard governing motions for summary judgment is well settled.  Summary

judgment should be rendered when "the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and that the movant is

therefore entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For the purposes of

summary judgment, the Court must construe the evidence in the light most favorable to the non-

moving party and draw all reasonable inferences in favor of the non-moving party.  Spinelli v. City

of New York, 579 F.3d 160 (2d Cir. 2009).  The moving party bears the burden of establishing the

absence of any genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986).  However, the non-moving party cannot avoid summary judgment through vague assertions

regarding the existence of disputed material facts, or "defeat the motion through mere speculation or

conjecture."  W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

Biro moves for summary judgment on the grounds that the subject machine was not a Biro machine. Biro disputes Dr. Ketchman's opinion that the subject machine was made by Biro, placing heavy reliance on the fact that the subject machine was destroyed before Dr. Ketchman was able to inspect it, and thus his identification of the subject machine as a Biro machine relies on Mayancela's photographs. However, in the context of a product liability action, the identity of the manufacturer is an issue of fact that can be resolved through the use of circumstantial evidence. Treston v. Allegretta, 581 N.Y.S.2d 289, 290 (1st Dep't 1992). Dr. Ketchman's comparisons of the photographs to the exemplar machine and images of other machines, and his tracing of the 1967 Biro model outline, are sufficient evidence upon which a reasonable fact finder could determine that the subject machine was a Biro.

Biro further contends that it is entitled to summary judgment because Mayancela has failed to proffer sufficient evidence of a design defect. Plaintiff's defective design claim is governed by New York common law, which provides that a manufacturer is liable to an injured user of its products when: 1) the product is defective because it is not reasonably safe as marketed; 2) the product was used for a normal purpose; 3) the defect was a substantial factor in causing the plaintiff's injuries; 4) the plaintiff by the exercise of reasonable care would not have both discovered and apprehended its dangers; and 5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care. See Codling v. Paglia, 32 N.Y.2d 330, 342 (1973). Additionally, in a product liability design defect action, the plaintiff has the burden of proffering evidence that the product could feasibly have been designed without the purported defect in a manner that would have prevented the alleged injury. Burgos v. Lutz, 512 N.Y.S.2d 424 (2d Dep't 1987). Dr. Ketchman's admissible expert testimony (as to elements 1, 3, 4, and 5 above) and Mayancela's deposition testimony (as to element 2) are sufficient to frame a genuine issue of fact as to whether a defect in

the design of the finger guard exposed Mayancela's hand to the blade.  Mayancela therefore has

proffered sufficient evidence in support of her design defect claim to defeat Defendant's motion for

summary judgment.

Biro also argues that, even if the subject machine was a Biro product, the

modifications made to it were substantial enough to absolve Biro of any responsibility.  Generally, a

manufacturer's duty to design a non-defective product ends once the product leaves the

manufacturer's control.  Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 479

(1980).  Thus, if someone modifies the product after it has left the manufacturer's control, and that

modification renders the product defective, the manufacturer is not responsible for any injuries

proximately caused by that modification.  Id.; Reyes v. Harding Steel Inc., 856 N.Y.S.2d 562, 563

(1st Dep't 2008).  Only when the Court can determine as a matter of law that the modification

proximately caused the injury, however, is summary judgment warranted on subsequent modification

grounds.  Fernandez v. Mark-Andy, Inc., 776 N.Y.S.2d 305, 307 (2d Dep't 2004).

Mayancela proffers that, while it appears that the motor speed had been increased

from 3/4 HP to 1/2 HP and the interlock switch removed, neither of these modifications could have

caused the accident.  Ketchman Aff. ¶ 36.  Specifically, the exposed blade could have injured

Mayancela's hand even if the motor had been running at its original speed.  According to Dr.

Ketchman, the interlock switch, which was designed to shut off power to the machine only if the

hood were raised, would not have made a difference in this accident, in which the hood was never

raised.  Furthermore, there is no evidentiary proffer that any material modification was made to the

finger guard, the component of the subject machine whose design defect allegedly caused the

accident.  Accordingly, the issue of the significance, if any, of the modifications is for the jury.  See

LaFontant v. Hollymatic Corp., 626 N.Y.S.2d 267 (2d Dep't 1995).

<u>CONCLUSION</u>

For the aforementioned reasons, Biro's motion <u>in limine</u> to exclude the testimony of Dr. Ketchman and its motion for summary judgment are both denied.

The parties must promptly contact Judge Pitman's chambers to schedule a settlement conference.  If the parties fail to settle their dispute, they must appear for a Final Pre-Trial Conference on **Friday, July 9, 2010, at 11:00 a.m.**  The parties must confer and make submissions in advance of the pre-trial conference as required by the previously entered Pre-Trial Scheduling Order (docket entry No. 8).

This Memorandum Opinion and Order resolves docket entries nos. 15 and 16.

SO ORDERED.

Dated: New York, New York
       March 5, 2010

LAURA TAYLOR SWAIN
United States District Judge